IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LETICIA HERNANDEZ, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | NO.  EP-10-CV-00284-KC-ATB | |
| § | (by consent) | |
| CAROLYN W. COLVIN, § | | |
| ACTING COMMISSIONER OF SOCIAL § | | |
| SECURITY ADMINISTRATION[1], § | | |
| Defendant. § | | |

### MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties have consented to trial on the merits before a United States Magistrate Judge. The case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. After considering the briefs, the record evidence of the administrative proceedings, and the written decision of the Administrative Law Judge ("ALJ"), the Court AFFIRMS the final decision of the Commissioner.

### BACKGROUND

Plaintiff **LETICIA HERNANDEZ** was born on June 16, 1960, making her 49 years old

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

1

at the time of the ALJ's decision. (R. 52).[2] Plaintiff was 48 at the time of the ALJ hearing, on June 6, 15, 2009. (R. 28). She completed high school and two years of college. (R. 28-29). She speaks both English and Spanish and prefers to communicate in English. (R. 270). She has previous work experience as a data entry clerk and as a payroll clerk. (R. 29, 46). She testified that she can no longer work due to depression, panic disorder with agoraphobia, anxiety, stomach problems, bladder problems, swelling of the knees, and pain in her back, right arm, and left ankle. (R. 31-43).

## PROCEDURAL HISTORY

Plaintiff filed her DIB application on May 25, 2007, alleging disability since May 7, 2007. (R. 31, 107-11, 130). Plaintiff's application was initially denied on September 10, 2007, and then again denied upon reconsideration on February 26, 2008. (R. 54, 62). Plaintiff requested and was granted a hearing before an ALJ and a remote video hearing was held on June 15, 2009, at which Plaintiff and a vocational expert testified. (R. 24-51, 71).

On July 31, 2009, the ALJ issued a decision finding that Plaintiff could perform a reduced range of light work despite experiencing the following severe impairments: obesity, osteoarthritis, osteoporosis, muscle strain, bladder problems, depression disorder not otherwise specified (NOS), panic disorder with agoraphobia, mild lumbar spondylosis, lumbar disc bulging, and status-post left ankle fracture. (R. 12, 16). Despite these findings, the ALJ found that Plaintiff retained the ability to perform her past relevant work as a data entry clerk and so Plaintiff was not disabled. (R. 18-19). Plaintiff's request for review was denied by the Appeals

---

[2] Court documents filed in this case are designated by "(Doc. [docket entry number(s)]:[page number(s)])." Administrative proceedings are designated by "(R. [page number(s)])."

Council on April 29, 2010. (R. 3-5).

Plaintiff filed her complaint on August 2, 2010. (Doc. 1). On December 7, 2010, the Commissioner filed an answer. (Doc. 10). The next day, December 8, 2010, a transcript of the administrative proceedings was filed. (Doc. 11). The District Judge, with the consent of both parties, subsequently entered an order transferring the case to U.S. Magistrate Judge Richard P. Mesa.[3] (Doc. 19). On April 11, 2011, Plaintiff filed his brief in support of reversing the Commissioner's decision and remanding for an award of benefits or, alternatively, for additional administrative proceedings. (Doc. 16). On May 10, 2011, the Commissioner's brief in support of the decision to deny benefits was filed. (Doc. 17). This matter is now ripe for decision.

## DISCUSSION

**A.    Standard of Review**

This Court's review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A finding of "no substantial evidence" will be found only where there is a "conspicuous absence of

---

[3] This case was reassigned to this Court on December 6, 2012, by order of Judge Richard P. Mesa. (Doc. 20).

credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues de novo. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).

The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings. *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir.1992) (citing *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir. 1983)) (per curiam). "The role of the courts in this quintessentially administrative process is extremely narrow" and "the Commissioner's decision is granted great deference." *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995). If the Commissioner applied the proper principles of law and his findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360. Conversely, if the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's

decision and remand the case for further proceedings. *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011).

### B.      *Evaluation Process and Burden of Proof*

"Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *2 (N.D. Tex. Aug. 9, 2012) (quoting 42 U.S.C. § 423(d)(1)(A)).  In determining disability, the ALJ makes his/her findings according to a sequential five-step evaluation.  20 C.F.R. § 404.1520.  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Greenspan v. Shalala*, 38 F.3d at 236.

In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of her medical condition or her age, education and work experience.  20 C.F.R. § 404.1520(b).

The ALJ then determines whether the claimant's impairment is severe under the second step.  20 C.F.R. § 404.1520(c) (1999); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).[4]

---

[4] "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101.  Any application of this standard will be presumed incorrect unless "the correct standard is set forth by reference to this opinion (*Stone*) or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used. *Id.* at 1106.

An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. § 404.1520(c) (1999).

Under the third step, an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of vocational factors. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under the Listings, the evaluation continues to the fourth step.

The fourth step requires a review of the claimant's residual functioning capacity ("RFC") and the demands of her past relevant work.[5]  20 C.F.R. § 404.1520(e). If an individual is capable of performing the work she has done in the past, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(e).

If an individual's impairment precludes her from performing her past relevant work, the fifth and final step evaluates the claimant's ability, given her residual capacities and her age, education and work experience, to do other work. If an individual's impairment precludes her from performing her past relevant work, she will be found to be disabled. 20 C.F.R. § 404.1520(f).

An individual applying for supplemental security income benefits bears the initial burden of proving that she is disabled for purposes of the Social Security Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps of the sequential analysis, and once met, the burden shifts to the Commissioner to show that there is

---

[5] Past relevant work is work that was done by the claimant within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b).

other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of the opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that she cannot, in fact, perform that work. *Anderson v. Sullivan*, 887 F.2d at 632.

C.   *ALJ's Decision*

The ALJ issued a decision on July 31, 2009. Following the sequential steps, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since May 7, 2007, the alleged onset date. (R. 12). At step two, the ALJ determined that Plaintiff had the following severe impairments: depression disorder NOS, panic disorder with agoraphobia, obesity, osteoarthritis, osteoporosis, mild lumbar spondylosis, lumbar disc bulging, muscle strain, status-post left ankle fracture, and bladder problems. (R. 12).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment under step three. (R. 15). The ALJ found very little objective medical evidence in Plaintiff's treatment record and none that established a Listing-level impairment. (R. 15-16). Specifically, the ALJ determined that

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c). Specifically, she can lift and carry up to twenty pounds occasionally and 10 pounds frequently. She can sit 6 hours and stand and/or walk 6 hours in an 8 hour work day. She cannot climb ropes, ladders, or scaffolds, but she can occasionally climb ramps and stairs. She should never perform work

>involving unprotected heights.  She can occasionally kneel, bend and stoop. [Plaintiff] can occasionally overhead reach with her right hand (her dominant hand).  [Plaintiff] is capable of understanding, carrying out and remembering detailed but not complex instructions.

(R. 16).

Based on this RFC, the ALJ at step four found that Plaintiff retained the ability to perform her past relevant work as a data entry clerk.  (R. 18).  Accordingly, the ALJ ruled that the Plaintiff was not disabled within the meaning of the Social Security Act and that further analysis of the Plaintiff's disability claim under step five was unnecessary.  (R. 19).

### E. *Discussion*

Plaintiff asserts that the ALJ erred in finding that she retained the ability to perform her past relevant work.  She challenges the ruling on two grounds.  Plaintiff claims that the ALJ failed to consider her moderate limitation in social functioning and her bladder problems when determining her RFC.  (Doc. 16:3).  She also argues that the ALJ's opinion was not supported by substantial evidence because the testimony of the vocational expert was flawed.  In particular, Plaintiff argues that the hypothetical presented to the vocational expert did not account for all of her limitations. (Doc. 16:6-8).  The Court will address each of Plaintiff's claims in turn.

### 1. *Failure to Consider Limitations*

Plaintiff claims in her first issue that the ALJ failed to consider all of her limitations in determining her RFC.  Plaintiff argues this was error because a claimant's RFC finding must include all limitations supported by the record, even those that are not severe.  20 C.F.R. §§ 404.1545(e) and 416.945(e).  Specifically, Plaintiff alleges that the ALJ failed to consider her moderate limitation in social functioning and her bladder problems.  (Doc 16:3).  According to

the Commissioner, the ALJ did account for both the moderate limitation in social functioning as well as Plaintiff's bladder problems. (Doc. 17:4-7). Despite Plaintiff's claim of error, this Court holds that the ALJ did properly consider both her moderate limitation in social functioning and her bladder problems for the reasons stated below.

      a.   Whether the ALJ Disregarded a Social Functioning Limitation

Plaintiff notes that Dr. Schutte, the consultative examining psychologist, diagnosed Plaintiff with panic disorder with agoraphobia, depressive disorder NOS and a prior history of alcohol abuse on January 31, 2008. (Doc. 16:4). During this examination, Dr. Schutte found her to have a Global Assessment of Functioning score of 60.[6] Plaintiff states that her score is indicative of someone suffering from "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." (Doc. 16:4).

In addition to ignoring the GAF score, Plaintiff also contends that the ALJ disregarded her self-reporting to Dr. Schutte that she felt nervous around others at work, experienced panic attacks on the job, worried about going to work, and had anxiety around others. (Doc. 16:4-5). Finally, Plaintiff states that she was being treated by her regular physician, Dr. Guzman, for depression, indicated by the various anti-depressants he had prescribed her. (Doc. 16:4).

First, a GAF score is not determinative of a claimant's ability to work. *Fuller v. Astrue*,

---

[6] GAF is a standard measurement of an individual's overall functioning level. The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders, Text Revised,* pp. 25–30 (4th ed. 2000). *See also Muth-Willett v. Astrue*, 1:11-CV-1547, 2012 WL 2862614, at*3 n. 2 (W.D. La. May 9, 2012).

No. 4:09–CV–197–A, 2010 WL 5566819, at *8 (N.D.Tex. Oct.13, 2010), adopted in 2011 WL 94549 (N.D.Tex. Jan.11, 2011).  Federal courts have specifically declined to find a link between a claimant's GAF score and her ability or inability to work.  *See* 65 Fed.Reg. 50746, 5076465 (Aug. 21, 2000) (declining to endorse the GAF scale for use in Social Security and SSI disability programs and stating that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"); *see also, e.g.*, *Andrade v. Astrue*, No. 4:11–CV–318–Y, 2012 WL 1106864, at *8 (N.D.Tex. Feb. 13, 2012), adopted in 2012 WL 1109476 (N.D.Tex. Apr. 2, 2012).

Moreover, the GAF score was just one diagnostic tool Dr. Schutte used in his evaluation of the Plaintiff.  (R. 270-74).  Even when the ALJ does not expressly mention the GAF score, the Fifth Circuit has held that an express mention of the medical visit in which the plaintiff received the score suggests that the ALJ did in fact consider it.  *See Hoelck v. Astrue*, 261 Fed. Appx. 683, 685-86 (5th Cir. 2008).  Here, in fact, the ALJ did mention the GAF score but used it in context with the rest of Dr. Schutte's evaluation.  (R. 14).

The ALJ noted that Plaintiff self-reported to Dr. Schutte a ten year history of depression.  (R. 270).  She stated that she gets nervous around her coworkers and experienced panic attacks at work.  (R. 270).  She also reported having difficulty concentrating and remembering tasks.  (R. 270).  In addition, Plaintiff reported that she spends her days "cleaning, cooking, and caring for her mother," and she preferred being away from her home with others, rather than alone.  (R. 272).  Dr. Schutte found that the Plaintiff appeared fully oriented; her cognitive functions appeared grossly intact as she was alert and responsive; she demonstrated no speaking deficits or delusions; and her attention, concentration, and long-term memory appeared normal.  (R. 271-

10

72). Based on the examination and Plaintiff's subjective description of her abilities, and despite the lack of treating medical records to support the Plaintiff's subjective claims of a panic disorder, Dr. Schutte assessed Plaintiff with a panic disorder with agoraphobia and a depressive disorder NOS. (R. 272). The ALJ discussed Dr. Shutte's determination in his report. (R.14).

Finally, Plaintiff concedes she did not receive any mental health treatment from a psychiatrist, but claims that her general physician's treatment of her depression demonstrates the presence of a mental condition. (Doc. 16:4). But while Plaintiff's primary care physician allegedly prescribed her Paxil, Zoloft, Sertraline, and Venlafaxine, the medical records do not include any diagnosis of an anxiety disorder or depression by her treating physician. Although the ALJ has a duty to develop the record before determining the claimant is not disabled, the duty must be balanced against the fact that the claimant bears the burden of proof up through step four of the evaluation process. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The obligation to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Here, the ALJ had more than adequate evidence in the record to make his determination. The ALJ acknowledged that some medical records referenced depression, but the ALJ further observed that Plaintiff did not exhibit any mental deficits during the hearing and reported having friends, although she had difficulty making new ones. (R. 15). In addition to the report of Dr. Schutte, the ALJ also considered a general examination performed by Dr. Dino Saracino on August 3, 2007. (R. 258-63). Plaintiff did not report any mental problems and Dr. Saracino did not observe any mental difficulties. (R. 259-61). Plaintiff reported that she spends her days

"cleaning, cooking, and caring for her mother," and she preferred being away from her home with others, rather than alone. (R. 272).

Accordingly, the Court holds that the ALJ properly considered the Plaintiff's social functioning limitation. Plaintiff's claim fails on this ground.

### b. Whether the ALJ Disregarded Severe Bladder Problems

Plaintiff also contends that the ALJ failed to consider the full extent of her bladder problems in determining her RFC. (Doc. 16:3, 5). Plaintiff testified that she has to use the restroom about twenty-four times a day and sometimes has accidents on the way to the restroom. (R. 34). Plaintiff also testified that she has been experiencing bladder problems since 1996 and was seeing a specialist but had to stop because she did not have the money to continue. (R. 41). Plaintiff testified that she was being treated for her bladder problem by Dr. Guzman, who had prescribed Detrol and other medications. (R. 35). Plaintiff, however, failed to present objective evidence to show how the bladder problems prevented her from working.

When presented with a hypothetical that took the Plaintiff's subjective claims fully into account, the vocational expert testified that a person with an RFC which included a limitation relating to bathroom breaks every hour, for five to ten minutes each, could perform neither Plaintiff's past relevant work nor any other job in the regional or national economy. (R. 48-49). The Plaintiff argues that based on the vocational experts testimony, the ALJ should have proceeded to step five of the sequential evaluation.

However, objective medical evidence, at least in part, must corroborate a claimant's subjective complaints. *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991); 20 C.F.R. §

405.1508. A claimant's own testimony is not the equivalent of medical evidence, and may not take precedence over conflicting medical evidence. *Harper v. Sullivan*, 887 F.2d 93, 96 (5th Cir. 1989). Although the ALJ determined that the Plaintiff had severe bladder problems, the ALJ determined that the Plaintiff's subjective complaints as to the extent they incapacitated her were not fully credible. (R. 12, 18).

The ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible. *Chater,* 67 F.3d at 565 (considering a plaintiff's daily activities as support for the ALJ's findings that the plaintiff was capable of performing past relevant work). Here, the treating medical records did not reveal any social functioning or bladder-related limitations. The ALJ discussed Plaintiff's bladder problems and observed that her medical records did not indicate any renal impairments due to chronic renal disease that has lasted for at least 12 continuous months, and observed that there was no evidence Plaintiff received chronic hemodialysis or peritoneal dialysis, kidney transplantation, or persistent elevation of serum creatinine. (R. 15). The ALJ noted that there was also no medical evidence that the Plaintiff suffered from incontinence. (R. 15).

The Court finds that the ALJ's credibility determination is supported by substantial evidence, so it will not disturb those findings. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."). The ALJ needed only to include those limitations that he accepted as credible and that were supported by evidence.

*Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002); *see also Hoelck v. Astrue*, 261 Fed. Appx. at 686.  Because the ALJ determined the Plaintiff's bladder complaints were not as severe as the Plaintiff maintained, and that her condition did not prevent her from doing her past relevant work, the ALJ did not have to proceed to step five of the process. Accordingly, the Court finds that the ALJ did not err in assessing the plaintiff's credibility with respect to her subjective bladder complaints.

This court is not permitted to reweigh the evidence, and although the ALJ did not discuss every piece of potentially relevant evidence in each step of his analysis, this is not required. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994).  There is substantial evidence to support the ALJ's RFC assessment that neither Plaintiff's bladder condition nor social functioning limitations would have prevented her ability to perform her past work as a data entry clerk.

   2.   *Incomplete Hypothetical Presented to Vocational Expert*

Once the ALJ determines plaintiff's residual functional capacity, he may rely on vocational expert testimony to reach conclusions about the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.  20 C.F.R. § 404.1566(d), (e); *Villalpando v. Astrue*, 320 F. Appx. 208, 211 (5th Cir. 2009).  In her final argument, Plaintiff states that the ALJ's opinion was not supported by substantial evidence because the testimony of the vocational expert relied upon by the ALJ was based on an incomplete hypothetical.  (Doc. 16:6-9).  Specifically, Plaintiff claims that the hypothetical question failed to account for Plaintiff's moderate limitation in social functioning.  (Doc. 16:8).  "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to

incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions. . .a determination of non-disability based on such a defective question cannot stand." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

The ALJ's decision reflects that he relied on vocational testimony. (R. 18). The ALJ posed a hypothetical to the vocational expert that accounted for Plaintiff's age, education, work experience, physical limitations, and mental limitations. In response, the VE testified that such a person could work a semi-skilled job performed at the sedentary exertional level as a data entry clerk. (R. 18-19, 46-48).

For a hypothetical to be proper, it "need only incorporate the disabilities that the administrative law judge recognizes." *Wise v. Barnhart,* 101 F. Appx. 950, 951 (5th Cir. 2004) (per curiam) (unpublished) (citing *Bowling,* 36 F.3d at 435; *Morris v. Brown,* 864 F.2d 333, 336 (5th Cir. 1988)). It is not the Court's role to reweigh the evidence. As discussed above, there is substantial evidence that the ALJ took the moderate social limitation into account when determining Plaintiff's RFC. The ALJ noted that Plaintiff did not exhibit any mental deficits during the hearing, she admitted to having friends, and she enjoyed going to the movies. (R. 15, 272). Her treating records also did not demonstrate mental limitations that would affect her ability to perform her past work as a data entry clerk.

Even assuming, *arguendo*, that the ALJ's hypothetical was incomplete, Plaintiff has waived the argument. When presented with an opportunity to cure the alleged deficiency in the

hypothetical, neither the Plaintiff nor her attorney at the hearing did so, thereby waiving her right to object to this issue. *See Quintanilla v. Astrue,* 619 F.Supp.2d 306, 323 (S.D.Tex. 2008) ("An applicant waives his right to challenge a hypothetical on review if he does not address its deficiencies at the hearing.") (citing *Wise v. Barnhart,* 101 F. Appx. at 951).

In this case, the Plaintiff's attorney had the opportunity to ask the vocational expert to take into account the moderate social limitation. Plaintiff's attorney's question related only to the potential impact of severe side effects caused by medication on Plaintiff's employability.[7] Thus, even assuming the ALJ's hypothetical failed to take into account all of Plaintiff's limitations, the failure is not reversible error.

## **CONCLUSION**

After thoroughly reviewing the evidence presented to the ALJ and to the Appeals Council and the record as a whole, this court holds that the ALJ's opinion was supported by substantial evidence, and the decision of the Commissioner should be AFFIRMED. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SIGNED and ENTERED on** March 11, 2013.

_____
ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE

---

[7] The question: "If we add to the hypothetical that the individual has to go and take breaks to lie down because of severe medicine side effects more than two times a day, that would do away with all employment. Is that correct?" (R. 50).